**P.I.A. SARASOTA PALMS, INC., a Florida Corporation d/b/a Sarasota Palms Hospital, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of the United States Department of Health and Human Services, Defendant.**

No. 99–1399–CIV–T–23C.

United States District Court, M.D. Florida, Tampa Division.

Sept. 7, 2000.

Byron J. Gross, Hooper, Lundy & Book-man, Inc., Los Angeles, CA, Joseph B. Donnelly, Greene, Donnelly & Schermer, Tampa, FL, for P.I.A. Sarasota Palms, Inc., a Florida corporation dba Sarasota Palms Hospital, plaintiff.

Warren A. Zimmerman, U.S. Attorney's Office, Tampa, FL, Howard H. Lewis, General Counsel's Office, Atlanta, GA, for Donna E. Shalala, Secretary of the United States Department of Health and Human Services, defendant.

## ORDER

MERRYDAY, District Judge.

Before the Court is Magistrate Judge Jenkins' report and recommendation (Doc. 28). No party objects, and the time for objecting has passed. Upon consideration, the report and recommendation is **ADOPTED.** Plaintiff's motion for summary judgment (Doc. 12) is **GRANTED;** the defendant's cross motion for summary judgment is **DENIED** (Doc. 15).[1] This matter is **REMANDED** to the Secretary solely for the purpose of calculating the amount due to the plaintiff pursuant to its adjustment requests.

The Clerk is directed to (1) close this case, (2) terminate all pending motions, and (3) enter judgment accordingly.

## REPORT AND RECOMMENDATION

JENKINS, United States Magistate judge.

This matter comes before the court on plaintiff's **motion for summary judgment (Dkt.12)** and **motion for leave to augment the record** (Dkt.14) and defendant's **motion for summary judgment (Dkt.15).**[1] Oral argument was held on June 30, 2000.

## BACKGROUND

Plaintiff Sarasota Palms Hospital, a psychiatric facility which provides care for patients under the federal Medicare pro-

---

1. The plaintiff's motion to augment the record (Doc. 14) is **DENIED as MOOT.**

1. This matter has been referred to the undersigned by the district court for consideration and a Report and Recommendation. *See* Local Rules 6.01(b) and 6.01(c), M.D.Fla.

gram, is appealing a decision by defendant Shalala (the "Secretary") denying its request for certain Medicare reimbursements of $41,309, $44,881, and $59,692 for its cost reporting years ending May 31, 1988, May 31, 1989, and May 31, 1990, respectively, totaling approximately $145,882. (Dkt. 13 at 1; A.R. 16–17)

## STANDARD OF REVIEW

The parties have filed cross motions for summary judgment pursuant to Fed. R.Civ.P. 56. Each party asserts that the opposing party has failed to allege facts sufficient to support its position. (Dkt. 12; Dkt. 16) In order to prevail on its motion for summary judgment, the movant must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The initial burden of proof rests with the movant. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If a nonmovant will bear the burden of persuasion at trial, the movant's burden to provide proof that no genuine issue of material fact exists may be satisfied by the movant establishing that there is an absence of evidence to support the nonmovant's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant meets this burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. The court, constrained from weighing the evidence or making credibility determinations, must view the evidence in the light most favorable to the nonmovant. See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The evidence of the non-movant is to be be-lieved, and all justifiable inferences are to be drawn in his favor.").

■ Pursuant to 42 U.S.C. § 1395oo(f)(1), the Administrative Procedures Act, 5 U.S.C. § 706 governs the judicial review of the Secretary's decisions. See 42 C.F.R. § 405.1877. Under this standard of review, the courts will only set aside an agency's decision if it is found to be arbitrary, capricious, or an abuse of discretion; it is not in conformity with the law; or it is not supported by substantial evidence. See 5 U.S.C. § 706(2)(A); Sarasota Memorial Hosp. v. Shalala, 60 F.3d 1507 (11th Cir.1995); Medical Center Hosp. v. Bowen, 839 F.2d 1504 (11th Cir. 1988); Carraway Methodist Medical Center v. Heckler, 753 F.2d 1006, 1009 (11th Cir.1985) (citations omitted). The Secretary's interpretation of the Social Security Act is controlling unless found to be inconsistent with the statutory language or manifestly unreasonable. See Medical Center Hospital v. Bowen, 839 F.2d 1504, 1510 (11th Cir.1988) (citations omitted); Chevron U.S.A. v. Natural Resources Defense Council, Inc., et al., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), reh'g denied, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984).

■ Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion reached." University Health Services v. Shalala, 120 F.3d 1145, 1151 (11th Cir. 1997) (citation omitted).

## REGULATORY BACKGROUND

Pursuant to the Medicare regulations, Plaintiff is required to provide defendant an annual report detailing its costs related to the care it provides for Medicare-eligible patients. See 42 C.F.R. § 413.20. The cost report is the basis for the provider's reimbursement of costs and is analyzed and audited for defendant by a contracted fiscal intermediary ("Intermediary"), which then issues a notice of reimbursement to the provider. 42 C.F.R.

§ 405.1803. That decision is reviewable by the Provider Reimbursement Review Board ("PRRB"). 42 C.F.R. § 405.1835(a); § 405.1869. The Secretary may affirm, modify, or reverse the PRRB's decision. 42 C.F.R. § 405.1871(b); § 405.1875(g).

In 1982 Congress enacted the Tax Equity and Fiscal Responsibility Act ("TEFRA"), portions of which were intended to provide incentives for Medicare providers to operate more efficiently and economically. TEFRA provisions establish limits on reasonable cost reimbursements to care providers of Medicare patients. 42 C.F.R. § 413.40 Under TEFRA, a target amount is set for each provider based on its allowable inpatient costs for a base-period. 42 C.F.R. § 413.40(c)(4). The current year target amount is then determined by applying a rate-of-increase or update factor to the target amount of the base period. 42 C.F.R. § 413.40(c)(4)(iii). If a provider's operating costs exceed the target amount, the provider is subject to a reduction in its reimbursement, and if the operating costs are less than the target amount, the provider receives a bonus. 42 C.F.R. § 413.40(d).

TEFRA has provisions for exceptions and adjustments to the target amount if the provider experiences a distortion of its operating costs due to events beyond the provider's control or exceptional circumstances. *See* 42 U.S.C. § 1395ww(b)(4)(A)(i), which provides, in pertinent part, that:

> [t]he Secretary shall provide for an exception and adjustment to ... the method under this subsection for determining the amount of payment to a hospital where events beyond the hospital's control or extraordinary circumstances, including changes in the case mix of such hospital, create a distortion in the increase in costs for a cost reporting period (including any distortion in the costs for the base period against which such increase is measured).

The Secretary has promulgated regulations governing requests for exceptions and adjustments which provide, in pertinent part, that:

> (g) HCFA may adjust a hospital's operating costs (as described in paragraph (b)(1) of this section) upward or downward, as appropriate, under circumstances as specified in paragraphs (g)(2) and (3) of this section. HCFA makes an adjustment only to the extent that the hospital's operating costs are reasonable, attributable to the circumstances specified, separately identified by the hospital, and verified by the intermediary.... (2) Extraordinary circumstances. The hospital can show that it incurred unusual costs (in either a cost reporting period subject to the ceiling or the hospital's base period) due to extraordinary circumstances beyond its control. These circumstances include, but are not limited to, strikes, fire, earthquakes, floods, or similar unusual occurrences with substantial cost effects. (3) Change in case mix.... (h) Adjustments—(1) Comparability of cost reporting periods. (i) HCFA may adjust the amount of the operating costs considered in establishing cost per case for one or more cost reporting periods, including both periods subject to the ceiling and the hospital's base period, to take into account factors that could result in a significant distortion in the operating costs of inpatient hospital services. The adjustments include, but are not limited to, adjustments of the base period costs to include explicitly FICA taxes (if the hospital did not incur costs for FICA taxes in its base period), and services billed under Part B of Medicare during the base period, but paid under Part A during the subject cost reporting period.

42 C.F.R. §§ 413.40(g)–(h).

## PROCEDURAL HISTORY

Plaintiff's base period is its fiscal year ending May 31, 1983. (Dkt. 1 ¶ 18) Plaintiff's costs exceeded its target amount in

1988, 1989, and 1990, and Plaintiff sought an adjustment to its target amount for these years to reflect an increase in costs due to the Florida Indigent Care Tax (FICT).[2]

This case has been through three levels of administrative review. At the first stage, plaintiff's requests were denied by the Intermediary, who found that because the FICT did not cause the hospital to exceed the TEFRA rate of increase ceiling in the 1985 and 1986 cost reporting periods, it therefore could not have been a contributing factor for the years 1988, 1989, 1990. (A.R.15)[3]

Thereafter, the PRRB reviewed the decision of the Intermediary. (A.R.14–20) The PRRB found that the Intermediary erred in concluding that just because the provider did not exceed its TEFRA limit for one year due to the FICT "does not automatically make all subsequent years ineligible for relief." (A.R.19) The PRRB further found that these taxes cause "an increase in costs in the same manner as the imposition of the FICA tax." *Id.* The PRRB concluded that the Provider exceeded its TEFRA rate of increase for the years in question and that "the increase was due in part to the imposition of the Florida Indigent Care Tax which it did not incur, during its TEFRA base year." (A.R.20) It therefore found the Provider entitled to an adjustment for the 1988, 1989, and 1990 cost reporting years. *Id.*

The Administrator, Health Care Financing Administration, ("HCFA") reviewed the PRRB's decision and concluded that the Provider had not met its burden of proof that the FICT caused a significant distortion. The HCFA cited the hospital's failure to explain why it operated under FICT for two years "before claiming that the tax significantly increased its costs." The HCFA also noted "evidence of other circumstances that contributed to the Pro-

vider's increased costs." (A.R.6) The HCFA also concluded that the FICT is not an "extraordinary circumstance" with immediate and drastic consequences such as a flood or other natural disaster. (A.R.7)

### ISSUES PRESENTED

Plaintiff asserts that defendant's decision that it is not entitled to an FICT "exception" or "adjustment" to its target amount under the TEFRA is invalid, arbitrary, capricious, and an abuse of discretion, is unsupported by substantial evidence, and is otherwise not in accordance with the law. Plaintiff asks the court to reverse the Secretary's decision denying it TEFRA adjustments for the FICT for fiscal years 1988, 1989, and 1990, and require the Secretary to grant those adjustments.

### MOTIONS FOR SUMMARY JUDGMENT

The Secretary concluded that because the hospital was assessed FICT in 1985 and 1986 without experiencing costs in excess of its target amount, there is no basis for asserting that the cost overruns in 1988, 1989, and 1990 were due to the plaintiff's FICT assessment. (A.R.8)

Plaintiff disputes the Secretary's authority to deny a TEFRA adjustment request for one year on grounds that the provider did not exceed its TEFRA rate-of-increase ceiling in a previous year or did not request a TEFRA adjustment on the same basis in a previous year.

■ The TEFRA requires a comparison of a provider's cost report for the "current" reporting period with its base year target amount, adjusted by the update percentage. *See* 42 C.F.R. § 413.40(c)(4). It is undisputed that plaintiff's base period is its fiscal year ending May 31, 1983.

After an extensive review of the statutes governing Medicare cost reimbursements,

---

2. The FICT is 1.5 percent of a provider's net operating revenues. It took effect on May 18, 1984. Fla.Stat. ch. 395.101(2) (1990).

3. Citations to the administrative record are indicated by the letters "A.R." followed by the page number.

the court has found no statutory or regulatory support for using any cost report data when considering a request for an adjustment to a service provider's TEFRA target amount other than data for the cost reporting period at issue and the base year.

The Secretary's reliance on plaintiff's 1985 and 1986 cost report data during its deliberations on the FICT adjustment requests for 1988, 1989, and 1990 is not substantial evidence. The 1985 and 1986 cost reports are not relevant to whether plaintiff is entitled to an exception or adjustment to its target amount for later years.

■ The Secretary also cited "evidence of other circumstances that contributed to the Provider's increased costs" but did not elucidate (A.R.6) what these "other circumstances" are.[4] As such, the court cannot conclude that this factor is substantial

evidence supporting the Secretary's decision.[5]

■ It is therefore unnecessary to determine whether the Secretary erred as a matter of law in refusing to hold that the FICT will always cause a distortion of a provider's operating expenses for a given year or that it constitutes extraordinary circumstances.[6] *See Tenet Healthsystems Hospitals, In. et al. v. Shalala*, 43 F.Supp.2d 1334, 1343 (M.D.Fla.1999) (in addressing the issue of adjustments to a Medicare service provider's TEFRA target amount for FICT expenses, the Hon. Elizabeth A. Kovachevich found that the FICT expense qualified as both a "significant distortion" and an "unusual cost.").

Although the lack of substantial evidence alone supports plaintiff's motion, other issues raised by the parties warrant brief discussion.

During the hearing, plaintiff pointed out that the Secretary's statutory imperative

---

**4.** The only reference in the HCFA's decision to other cost increases the Provider incurred during this period is found in the discussion of the Intermediary's decision. (A.R.5–6) The HCFA cites to Exhibit I–3 accompanying the Intermediary's 5/31/89 Position Paper to support its statement that it "granted other adjustments requested by the Provider, due to factors other than the FICT in the same cost years [including] additional ancillary services, changes in occupancy, and new program services." (A.R.94) Exhibit I–3, however, relates to cost reporting periods 1987, 1988, and 1989. The expenses in dispute in these proceedings were incurred during cost reporting periods 1988, 1989, and 1990. *Id.* According to Exhibit I–3, the Provider received a reimbursement of $82,982 for the cost reporting period 1988 for supplies and drugs charged to patients and increased program services, and $92,612 for the cost reporting period 1989 for increased program services. *Id.* Surely these costs are not the "evidence of other circumstances" referenced in HCFA's decision because HCFA had already determined that plaintiff was entitled to an adjustment of the ceiling on its target amount for these costs. In any event, there appears to be no requirement under TEFRA applicable to this case that a provider show that a certain cost item, standing alone, distorted its operating costs. To the contrary, the Secretary "looked at the adjustments requested as a whole" during his

review of plaintiff's claim. Dkt. 20 at 4. Therefore, if these adjustments were the "other circumstances" to which the Secretary was referring, they are not substantial evidence either.

**5.** A 1990 amendment to the statute requires the Secretary to give a "detailed explanation" of the grounds on which an exemption, exception, or adjustment request is approved or denied. 42 U.S.C. § 1395ww(b)(4)(A).

**6.** The Secretary points out that unlike FICA taxes, a portion of the FICT may actually be remitted to the provider. *See* Fla.Stat. ch. 409.2662–63 (1990) (establishes the Florida Public Medical Trust Fund ("PMTF"), which serves as a conduit to redistribute FICT money to hospitals considered "major providers of indigent care."). Plaintiff responds that it never received any money from the PMTF, and there is nothing in the record to suggest otherwise. In any event, because the Secretary did not deny plaintiff's request on the grounds that it failed to establish the net effect of the FICT on its operating costs, this issue may not serve as a basis for affirming the Secretary's decision. *See Appalachian Regional Healthcare, Inc. v. Shalala*, 131 F.3d 1050, 1054 (D.C.Cir.1997) ("The Board's decision must stand on its own—counsel cannot justify the Board's decision before us with an explanation that the Board itself did not rely upon.").

provides for adjustments to a provider's target amount where there is a "distortion" in costs between the provider's base year target amount and the cost reporting period target amount. *See* 42 U.S.C. § 1395ww(b)(4)(A)(i) ("The Secretary shall provide for an exception and adjustment ... where events ... create a distortion in the increase in costs for a cost reporting period"). The word "significant" was added as a qualifier by the Secretary in promulgating the regulations governing Medicare reimbursements. *See* 42 C.F.R. § 413.40(h)(1) ("HCFA may make an adjustment to take into account factors that would result in a significant distortion in the operating costs"). Plaintiff argues that there is no statutory or regulatory definition of a "significant distortion" as that term is used in the Secretary's regulation. Dkt. 18 at 8.

Plaintiff also asserts that the term "significant distortion" cannot refer to the dollar amount of the expense because the Secretary approved other, smaller adjustment requests. Dkt. 18 at 8. For example, the Intermediary estimated that the reimbursement effect for plaintiff's 1990 FICT adjustment request is approximately $59,692. A.R. 16 The request for the FICT adjustment was denied, yet the Secretary granted an adjustment request which had a Medicare reimbursement impact of only $51,345 for increased program services in 1990. A.R. 199.

The Secretary also concluded that plaintiff failed to establish a causal link between the FICT and its increased costs. (A.R.6) In support of this position, the Secretary cites to regulations governing Medicaid cost reimbursements requiring that the increase in operating costs be "attributable to the circumstances specified, separately identified by the hospital, and verified by the intermediary." 42 C.F.R. § 413.40(g)(1). *See also Harmarville Rehabilitation Center, Inc. v. Shalala,* 1996 WL 679089 *1, 107 F.3d 922 (D.C.Cir.1996) ("*Harmarville* "), *aff'g.,* 1995 WL 599189 (D.D.C.1995) (where provider relied on 1983 cost data to support its assertion that 1984 cost increase was due to a withdrawal of Medigap insurance funds, the appellate court held that "[a] hospital must at a minimum demonstrate that the factor claimed in its request caused it to exceed its ceiling.").[7]

The instant case differs from *Harmarville,* however, because plaintiff's request for an adjustment is based on figures actually provided in its cost report for the applicable period, whereas the provider in *Harmarville* asked the Secretary to use 1983 data and extrapolate numbers to support its claim of cost increases in 1984. *See id.* The *Harmarville* court affirmed the district court's finding that substantial evidence supported the Secretary's decision that plaintiff had not established a causation for the cost overrun because: (1) Harmarville reported fewer Medicare chargeable days in 1984 than it reported in 1983 even though the change in Medigap insurance coverage should have resulted in more days charged to Medicare in 1984 compared to 1983 if that was the source of plaintiff's cost overrun; and (2) Harmarville experienced a decline in admissions in 1984, but there was no action taken to reduce its operating costs, which caused the Secretary to conclude that possible inefficiencies caused the cost overrun. *See id.*[8]

In this case, the basis for plaintiff's request for an adjustment to its target amount is based on a flat rate tax assessment of 1.5 percent of its net operating

7. In mid–1983, the insurer ceased allowing patients to use their Medigap coverage for inpatient costs before the patient had exhausted his/her 60–day lifetime reserve.

8. Moreover, the provider in *Harmarville* conceded that under the Secretary's regulations it was required to demonstrate that it experienced an actual distortion in its operating costs as a result of the costs for which it sought reimbursement.

revenue [9] for the cost reporting period under review and reported in its annual cost report. Moreover, the parties do not dispute that plaintiff paid its FICT assessment for the years in question. Furthermore, in finding that there was no causal link the Secretary relied on plaintiff's 1985 and 1986 cost reports. That reliance was improper, as previously discussed.

### PLAINTIFF'S MOTION TO AUGMENT THE RECORD

Plaintiff asks leave to augment the record before the court, asserting that the administrative record submitted by defendant is incomplete because it does not include plaintiff's 1985 and 1986 cost reports. Dkt. 14 at 1. In support of this assertion, plaintiff cites the Secretary's decision stating that the Administrator considered data contained in plaintiff's 1985 and 1986 cost reports in deliberating on the decision whether to allow plaintiff's requests for adjustments to its target amount for its 1988, 1989, and 1990 cost reporting periods. Dkt. 14 at 2; A.R. 3, 5, 6, n. 12. Plaintiff further asserts that there is no prejudice to the Secretary if the documents are added to the record because copies of these documents are already part of the records maintained by the Secretary. Dkt. 14 at 3.

During oral argument, the Secretary argued that these documents are not relevant to this case, were not offered into evidence during the Agency's hearing, and were not part of the record considered by the Administrator in reaching his decision.[10] According to the Secretary, the 1985 and 1986 reports were mentioned in correspondence from the Agency to the plaintiff only because plaintiff did not request a TEFRA adjustment for those years.

In view of this court's finding that the 1985 and 1986 cost reports are not relevant to whether plaintiff is entitled to an exception or adjustment to its target amount for later years, plaintiff's request to augment the record with a copy of the 1985 and 1986 cost reports is moot.

### CONCLUSION

The Secretary's decision to deny plaintiff's requests for an adjustment to its TEFRA target amounts for plaintiff's cost reporting periods ending in 1988, 1989, and 1990 is unreasonable and inconsistent with the Medicare statutes and regulations and is not supported by substantial evidence.

**ACCORDINGLY**, it is **RECOMMENDED** that:

1. Plaintiff's motion for summary judgment be **GRANTED** and the Secretary be **ORDERED** to grant the plaintiff hospital's adjustment requests for cost reporting periods ending May 31, 1988, May 31, 1989, and May 31, 1990.

2. This case be **REMANDED** to the Secretary solely for the purpose of calculating the amount due plaintiff hospital pursuant the adjustment requests.

3. Defendant's motion for summary judgment be **DENIED.**

4. Plaintiff's motion to augment the record be **DENIED** as moot.

---

9. In *Harmarville*, suspension of the Medigap insurance coverage resulted in only a ½ percent increase in overall costs. *Harmarville*, 1996 WL 679089 at n. 3.

10. Curiously, while the Secretary contests the relevancy of the 1985 and 1986 cost reports before the court, the Secretary's final administrative decision rests squarely on this evidence.