United States Court of Appeals,

Eleventh Circuit.

No. 94-2683.

SARASOTA MEMORIAL HOSPITAL; Venice Hospital; HCA Doctors Hospital of Sarasota; Englewood Community Hospital, Plaintiffs-Appellants,

v.

Donna E. SHALALA, Secretary, Department of Health and Human Services, Defendant-Appellee.

Aug. 11, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-1816-CIV-T-17(A), Elizabeth A. Kovachevich, Judge.

Before DUBINA, Circuit Judge, RONEY and ESCHBACH[*], Senior Circuit Judges.

DUBINA, Circuit Judge:

Plaintiffs/Appellants, four hospitals in the Sarasota, Florida Metropolitan Statistical Area ("MSA"), appeal from the district court's grant of summary judgment in favor of the Secretary of Health and Human Services ("the Secretary") denying the hospitals' claim that they were entitled to an adjustment to the wage index that was used to calculate their Medicare reimbursement payments for fiscal years 1986 through 1988. The district court's order specifically upheld the Secretary's determination that Social Security payments paid by one of the hospitals, Sarasota Memorial Hospital, in accordance with the Federal Insurance Contributions Act ("FICA") on behalf of its employees, were properly classified as fringe benefits and not wages for Medicare reimbursement

---

[*]Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

purposes.  We reverse.

                    I. Statement of the Case

A. *Facts and Procedural History*

     The Social Security Amendments of 1983, Pub.L. No. 98-21, 1983
U.S.C.C.A.N. (97 Stat.) 65, created a Prospective Payment System
("PPS") to reimburse hospitals for operating costs incurred in
providing inpatient services to Medicare patients.  Under this
system, hospitals were to be reimbursed a fixed amount for each
patient treated depending upon the type of treatment provided.  To
establish the PPS, the Secretary was required to develop several
rates and adjustment factors to determine the amount each hospital
would be reimbursed for its inpatient operating costs.  One of the
rate adjustment factors is known as the wage index, which was
created to reflect "the relative hospital wage level in the
geographic area of the hospital compared to the national average
hospital wage level."  42 U.S.C. § 1395ww(d)(3)(E) (1983).

     The wage index at issue in this appeal was based on total
wages paid by the hospitals in the Sarasota MSA during their fiscal
year ending in 1982.  In March of 1984, Medicare fiscal
intermediaries, acting as agents for the Health Care Financing
Administration ("HFCA"),[1] which is responsible for the
administration of Medicare Services, submitted surveys to hospitals
providing Medicare services to determine the average hourly wage

_____

     [1]A fiscal intermediary is a private organization, usually an
insurance company, that has contracted with the Secretary to act
as an agent for the HFCA.  Under previous regulations, provider
hospitals were required to submit annual cost reports to
designated intermediaries to determine the total amount of
Medicare reimbursement owed to the provider.

paid in 1982 by hospitals in each MSA.  Like the other hospitals in the Sarasota MSA, Sarasota Memorial Hospital ("Memorial") reported information regarding its wages and employee-related costs for 1982 to the HFCA.  The HFCA calculated the Sarasota MSA average hourly wage and compared it to regional and national average hourly wages to create a wage index.  This wage index was then applied to compute the PPS payments for Medicare services rendered on or after May 1, 1986, and through September 30, 1987.[2]

In 1982, Memorial was responsible for paying FICA taxes, which included a tax equal to 6.7% of the employees' wages.  In addition, each employee at Memorial was also responsible for paying 6.7% of his or her wages in FICA taxes, but these taxes were ordinarily withheld from each employee's gross wages, resulting in lower take-home pay.  In 1982, however, Memorial paid the FICA taxes for which its employees were responsible, rather than withholding 6.7% from each employee's wages.  Therefore, when Memorial filled out its 1982 fiscal year cost report, it reported the FICA taxes it had paid on behalf of its employees as employee health and welfare costs, rather than gross hospital salaries.  Because the wage survey that Memorial received in 1984 required the providers to report their employee health and welfare costs and gross salaries as reported on their 1982 cost reports, Memorial reported the employee FICA payments it had paid as employee health and welfare costs, rather than gross salaries.

As a result of Memorial's exclusion of the employee FICA

_____

[2]In addition, the 1982 wage index was combined with the 1984 wage index to determine payments for Medicare services rendered during the fiscal year ending in 1988.

payments from gross salaries on the survey form, the HFCA did not include the FICA payments in Memorial's wage costs when calculating the wage index for the Sarasota MSA. Revision of the Sarasota 1982 wage index to include Memorial's FICA payments made on its employees' behalf in 1982 would result in an estimated $1,056,000.00 additional Medicare payment to Memorial and an additional $6,299,661.80 to all hospitals in the Sarasota MSA.

Before publishing the final 1982 wage index for Sarasota, the HCFA wrote to the hospitals participating in the wage survey and provided them with the opportunity to verify the accuracy of their data. Although Memorial notified the HFCA of its exclusion of the FICA payments from its wage costs and requested that the payments be included in its salary figures, HFCA refused to revise the 1982 wage index, stating that it considered employee FICA contributions paid by an employer to be fringe benefits, not wages. In its response the HCFA quoted the definition of fringe benefits from the Medicare Provider Reimbursement Manual § 2144.1, which provides: "[f]ringe benefits are amounts paid to, or on behalf of, an employee, in addition to direct salary or wages, and from which the employee ... derives a personal benefit before or after the employee's retirement or death."

The hospitals in the Sarasota MSA appealed the Secretary's determination that the FICA payments were not wages to the Provider Reimbursement Board ("the Board") pursuant to 42 U.S.C. § 1395 *oo* (a). Although the Board held that it had jurisdiction over the matter, it recognized that it is bound by Medicare regulations, including the 1982 wage index published by the Secretary.

Accordingly, the Board held that it had no authority to resolve the appeal and granted expedited judicial review of the issue pursuant to 42 U.S.C. § 1395 *oo* (f)(1). The hospitals then filed suit against the Secretary in federal district court, arguing that the 1982 wage index was invalid because it treated the FICA contributions made by Memorial on behalf of its employees as fringe benefits, rather than as wages.

The parties filed cross motions for summary judgment, and the district court granted summary judgment to the Secretary, holding that her "interpretation of employer-paid employee FICA was entirely within her discretion, and reasonable in accordance with the existing law." *Sarasota Memorial Hospital v. Shalala,* 848 F.Supp. 974, 978 (M.D.Fla.1994). In addition, the district court held that the hospitals' contention that the Secretary's ruling was a change in existing policy and therefore violated the notice and comment provisions of the Administrative Procedures Act, 5 U.S.C. § 553, was without merit because the Secretary's decision was merely interpretive of the existing definition of the term "fringe benefit." The hospitals then perfected this appeal.

B. *Historical Background*

Prior to the Social Security Amendments of 1983, employees of state and local governments were not required to participate in the Social Security program; however, states could opt-in various groups of employees such as those in certain occupations. As a governmental hospital, Memorial was not required to participate in FICA, but some time before 1982, the State of Florida and the Secretary entered into an agreement that provided for Memorial and

other government entities in Florida to participate in the Social Security program.  42 U.S.C. § 418(a).  Once the agreement to participate was made by the State of Florida, Memorial and its employees were required to pay FICA taxes.  Thus, Memorial's participation in FICA in 1982 was not voluntary.

Prior to October 1, 1979, Memorial deducted its employees' FICA taxes from each employee's gross pay.  After October 1, 1979, Memorial began paying employee FICA taxes directly to the government instead of deducting them from the employees' gross pay. Under Internal Revenue Code ("IRC") provisions, an employer could pay its employees' share of FICA taxes directly instead of deducting them from gross wages, thereby reducing the employer's own payroll tax liability for FICA.  Although the IRC provision excluding employer-paid employee FICA taxes from employee gross income was eliminated in 1981, governmental employers covered by Social Security were permitted to continue to pay employee FICA taxes directly to the government through December 31, 1983. Omnibus Reconciliation Act of 1980, Pub.L. No. 96-499, § 1141, 1980 U.S.C.C.A.N. (94 Stat.) 2693-94;  26 U.S.C. § 3121(a)(6). Therefore, during fiscal year 1982 and through December, 1983, Memorial continued to pay FICA taxes on behalf of its employees and derived cost saving benefits by treating these payments as non-wages for purposes of FICA taxes.[3]

---

[3]In January, 1984, Memorial ceased paying its employees' share of FICA taxes because the IRS no longer permitted it to exclude employer-paid employee FICA taxes from the employees' wages for purposes of its own FICA liability.  In December, 1983, Memorial, anticipating the change, gave each employee a 6.7% wage increase, in addition to usual year-end wage adjustments, to cover deductions for the employee's share of FICA.

Before the PPS was developed, Medicare reimbursements had been based on a hospital's actual, reasonable costs, without a distinction between salaries and health and welfare costs. 42 U.S.C. §§ 1395f(b) (1982), 1395x(v)(1)(A) (1982). Like the annual cost reports, the survey on 1982 wages sought information regarding both salaries and health and welfare costs; however, the costs reported as employee health and welfare costs for the survey were not included in the calculation of the 1982 wage index. *See* 50 Fed.Reg. 24,377 (June 10, 1985).

## II. Standard of Review

Pursuant to 42 U.S.C. § 1395*oo* (f)(1), the standard for judicial review of the Secretary's actions is governed by the Administrative Procedure Act, 5 U.S.C.A. § 706. Under that standard of review, considerable weight should be given to an agency's regulations interpreting matters over which the agency is charged to administer. *See Medical Center Hospital v. Bowen,* 839 F.2d 1504, 1510 (11th Cir.1988) (citations omitted); *Chevron U.S.A. v. Natural Resources Defense Council, Inc., et al.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), *reh'g denied,* 468 U.S. 1227, 105 S.Ct. 28, 29, 82 L.Ed.2d 921 (1984). "Neither a district court nor an appellate court may overturn the Secretary's decision unless it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence in the record taken as a whole." *Carraway Methodist Medical Center v. Heckler,* 753 F.2d 1006, 1009 (11th Cir.1985) (citations omitted).

Although deference should be afforded especially "when, as

here [in Medicare], the regulation concerns "a complex and highly technical regulatory program,' in which the identification and classification of relevant "criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns,' " *Shalala v. Guernsey Memorial Hospital,* --- U.S. ----, ----, 115 S.Ct. 1232, 1243, 131 L.Ed.2d 106 (1995) (O'Connor, J., dissenting) (quoting *Thomas Jefferson University v. Shalala,* 512 U.S. ----, ----, 114 S.Ct. 2381, 2387, 129 L.Ed.2d 405 (1994) (citation omitted)), courts are not bound by an agency's interpretation. Furthermore, a court must not abdicate its responsibility to review "an agency's construction that is alleged to be inconsistent with the statutory mandate." *Medical Center Hospital,* 839 F.2d at 1510.

## III. Discussion

The issue on appeal is whether the Secretary correctly determined that the FICA contributions made by Memorial on behalf of its employees were fringe benefits and not wages for purposes of calculating the 1982 wage index for the Sarasota MSA. There are two parts to the FICA tax: half is owed by the employer, and half is owed by the employee. It is only the employee's half that is at issue here. The question is whether if the employer pays the half owed by the employee directly to the Government, rather than paying it as wages so the employee can pay what he or she owes the Government, the payment loses its character as part of the employee's wage. In this analysis, we refer to this as FICA taxes or contributions "paid on behalf of the employees."

We begin our analysis by examining the pertinent Medicare

statute, 42 U.S.C. § 1395ww(d)(3)(E) (1983), which provides:

> [t]he Secretary shall adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs ... for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

In accordance with this statute, the Secretary established the 1982 wage index for the periods relevant to this appeal.  A wage index had been used by the Department of Health and Human Services for many years prior to the advent of the PPS to adjust the proportion of hospitals' costs attributable to wages;  however, before the PPS was adopted, the adjustments affected only the hospitals' cost limits, rather than the hospitals' actual payment levels.  After the PPS was put into effect, Congress mandated that the Secretary develop a more accurate wage index than the one previously used under the former Medicare cost reimbursement program.  *See* H.R.Rep. No. 432, 98th Cong., 2nd Sess., pt. II, at 1809-10 (1984), *reprinted in* 1984 U.S.C.C.A.N. 1423-24.

FICA participation for non-governmental employers such as private hospitals was mandatory in 1982.  Private hospitals deducted FICA taxes from their employees' gross pay in a similar manner to deductions taken for income taxes.  For purposes of the wage index, the Secretary classified FICA taxes which were withheld from the private hospital employees' gross pay as wages. Memorial, however, paid its employee FICA taxes directly to the government, rather than including the amount of the tax in the employees' gross pay and then withholding it as a deduction.  Because of the manner in which the taxes were paid, the Secretary classified Memorial's

employee FICA taxes as fringe benefits and not wages, thereby excluding the FICA taxes from the calculation of Memorial's and, in turn, the Sarasota MSA's average wages. The Hospitals contend that the Secretary's refusal to include the FICA payments made by Memorial on behalf of its employees in computing the wage level for Memorial distorted the 1982 wage index so that it failed to reflect the relative hospital wage level for the Sarasota MSA compared to the other regions. Thus, the hospitals assert that the Secretary failed to develop an index that accurately compares the Sarasota MSA wage level with the national wage level in violation of the statutory mandate.

The Secretary responds that she correctly determined that the FICA payments made by Memorial on behalf of its employees were fringe benefits and not wages under existing Medicare law and FICA tax law. Moreover, the Secretary argues that the uniformity of the wage index would be compromised if she were required to determine which, if any, fringe benefits could be reclassified as wages. The Secretary's position is based upon her determination that employer paid contributions to pension plans, regardless of whether the plan is private or FICA, clearly fall within the Medicare Provider Reimbursement Manual ("PRM") definition of fringe benefits. *See* PRM § 2144.1, CCH, Medicare & Medicaid Manual ¶ 5999F.

The district court held that it is "entirely reasonable" that the Secretary would find that the employer-paid employee FICA payments fit into the PRM definition of fringe benefits. *Sarasota Memorial,* 848 F.Supp. at 978. In addition, the district court held that the Secretary's distinction in classification based upon who

pays the taxes was reasonable because the "definition of fringe benefits states that it is an amount paid by the employer." *Id.* We disagree.

Under PRM § 2144.1, an amount paid to or on behalf of an employee must be "in addition to direct salary or wages" before being classified as a fringe benefit. Therefore, the Secretary must classify FICA taxes as non-wages before they can be considered fringe benefits; yet, the Secretary is looking to the definition of fringe benefits to determine if the taxes are wages.

The Secretary heavily relies upon 26 U.S.C. § 3121(a)(6) to support her position that employee FICA taxes paid by a government employer are not wages for Medicare reimbursement purposes. By its own terms, however, § 3121(a)(6) excludes employer-paid employee FICA taxes from the definition of wages only for purposes of calculating FICA taxes.[4] Furthermore, employer-paid employee FICA taxes are included in the definition of wages for purposes of federal income taxes. *See First National Bank of Chicago v. United States,* 964 F.2d 1137, 1140 n. 8 (Fed.Cir.1992) ("The term "wages' includes the amount paid by an employer on behalf of an employee (without deduction from the remuneration of, or other reimbursement from, the employee) ... on account of any tax imposed upon the employee by [FICA].... 26 C.F.R. § 31.3401(a)-1(b)(6)"). Accordingly, the Secretary's reliance on § 3121(a)(6) as general

_____

[4]Section 26 U.S.C. § 3101 mandates that the income of every employee is subject to a tax equal to a percentage of the individual's wages as defined in § 3121(a). Section 3121(a) provides: "(a) Wages.—*For purposes of this chapter,* the term "wages' means all remuneration for employment...." (emphasis added). The chapter referred to codifies the IRC provisions governing FICA taxes.

authority for excluding employer-paid employee FICA from wages is misplaced.[5]

The distinction that the Secretary attempts to make here between FICA taxes paid by an employer on behalf of an employee and FICA taxes withheld from an employee's pay is of no consequence. Once the State of Florida chose to participate in the Social Security program, Memorial was required to participate and pay FICA taxes. Thus, the only way the payments could be considered voluntary payments to a pension fund, as the Secretary suggests, is to ignore the fact that Memorial, like all private hospitals throughout the nation, was required to pay the FICA taxes. Once Memorial participated in the program, it was in a uniform position with all private hospitals and other participating governmental hospitals. Because the Secretary was required to establish a wage index to create a uniform picture of what wage levels were at all provider hospitals in 1982, we hold that the Secretary's exclusion of employee FICA taxes from wages for some hospitals and not others, for purposes of creating the 1982 wage index, was arbitrary and capricious.

Moreover, we reject the Secretary's assertion that she could not allow only one governmental provider to reclassify fringe benefits as wages without compromising the uniformity of the index.

---

[5]Although the Secretary contended at oral argument that she had historically relied upon the FICA definition of wages for Medicare purposes and therefore further relied upon the definition to resolve this dispute, the Secretary has pointed to no regulations, case law, or significant decisions to support her position. Moreover, independent research reveals no decision, other than the instant one, where the FICA definition of wages was adopted for Medicare purposes.

In support of this argument, the Secretary contends that she had every reason to believe that all other governmental hospitals participating in FICA completed the survey as Memorial did originally, reporting employee FICA contributions as employee health and welfare costs rather than gross salaries. (Appellee's Brief at 19). Although the Secretary's decision is based upon maintaining a uniform index, the Secretary has conceded that relatively few hospitals "had the option to treat FICA the way [Memorial] did." (Appellee's Brief at 26). The uniformity of the wage index is compromised if the Secretary does not classify the same items of costs as wages for *all* providers.

The Secretary cannot make arbitrary distinctions between the same payments by different providers without any basis. *See LGH, Ltd. v. Sullivan,* 786 F.Supp. 1047, 1053 (D.D.C.1992). We see no reasonable basis for classifying the same FICA payments as wages when deducted from an employee's gross pay, but as fringe benefits when paid directly by the employer. In this case, the Secretary's decision to treat Memorial's employee FICA taxes as a fringe benefit for the limited purpose of excluding it from the 1982 wage index for the Sarasota MSA contradicts the definition of fringe benefits and is inconsistent with the Secretary's treatment of employee FICA taxes as wages for most of the other provider hospitals in the nation.

While we take seriously our obligation to afford deference to the Secretary's reasonable interpretation of her own regulations, particularly when a complex program like Medicare is concerned, we hold that the Secretary's classification of employee FICA taxes as

fringe benefits is unreasonable and inconsistent with the mandate of the Medicare statute requiring a uniform wage index.

Because we hold that the Secretary's policy of excluding employer-paid employee FICA taxes from wages is inconsistent with the mandate of § 1395ww(d)(3)(E) of the Medicare Act, we need not address Memorial's contention that the Secretary's decision changed existing policy and therefore failed to comply with the Administrative Procedures Act.

## IV. Conclusion

In summary, we conclude that the Secretary erred in refusing to include Memorial's employee FICA taxes as wages for the purpose of calculating the 1982 wage index for the Sarasota MSA. Accordingly, we reverse the district court's grant of summary judgment to the Secretary. Because the Secretary has stipulated that retroactive relief will be available to the appellants should we reverse the district court's judgment, we remand this matter to the district court with directions to remand it to the Secretary for the purpose of affording appellants the stipulated relief.

REVERSED and REMANDED.