NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0510n.06

No. 16-6530

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| OWENSBORO HEALTH, INC., | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Aug 31, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| SECRETARY OF HEALTH AND HUMAN | ) | UNITED STATES DISTRICT |
| SERVICES; UNITED STATES DEPARTMENT OF | ) | COURT FOR THE WESTERN |
| HEALTH AND HUMAN SERVICES, Centers for | ) | DISTRICT OF KENTUCKY |
| Medicare & Medicaid Services, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: DAUGHTREY, KETHLEDGE, STRANCH, Circuit Judges.

JANE B. STRANCH, Circuit Judge. This case involves a challenge to Medicare reimbursement rates. The defendant-appellee Secretary of Health and Human Services (HHS) is required by statute to create rates and indices for calculating reimbursements for healthcare provided to Medicare beneficiaries. The Centers for Medicare and Medicaid Services (CMS), an agency within HHS, performs these actions. The plaintiff-appellant Owensboro Health, Inc. (OHI) was negatively affected by a change in how medical technicians were classified in 2007 and brought this suit alleging CMS error. The district court upheld the agency's classification. We **affirm** as well.

## I.    BACKGROUND

### A.    Factual History and Context

1.  <u>Medicare Reimbursement, the Wage Index, and the Occupational Mix Adjustment</u>

Medicare undertakes the important task of providing healthcare services to many citizens across our nation.  Arranging payment for those services is a large and complex endeavor.  CMS is the agency within the Department of HHS that administers the Medicare program.  The Secretary of HHS has vested his rulemaking authority under the Medicare Act in CMS, which promulgates rules and also provides informal guidance to help implement the rules.  CMS contracts out payment and audit functions to insurance companies that are called fiscal intermediaries.  This case involves challenges to the way CMS interpreted the Medicare Act, promulgated rules in support of that interpretation, and implemented its decisions with the assistance of fiscal intermediaries.

Originally, Medicare reimbursement amounts were determined based on the reasonable costs incurred by the hospital in a particular case.  To create incentives for hospitals to lower costs, Congress amended the Medicare Act in 1983 to make reimbursement based on "predetermined, specific rates for each hospital discharge."  FY 2007 IPPS Final Rule, 71 Fed. Reg. 47,870, 47,875-76 (Aug. 18, 2006).  This method is called the Inpatient Prospective Payment System (IPPS).  Its rates are adjusted by a wage index that accounts for geographic differences in hospital labor costs.  For example, prevailing wages in the nursing market in Los Angeles are higher than wages in Owensboro, Kentucky; consequently, a hospital in Los Angeles is reimbursed 34% more for the wage-related portion of the IPPS than a hospital in Owensboro treating a similar patient.[1]  To define the geographic labor markets, CMS uses Core-

---

[1] For 2007, Los Angeles had a wage index of 1.1760.  Owensboro had a wage index of 0.8748.  *See* Cntrs. for Medicare & Medicaid Servs., *Addendum-FY 2007 CBSA Wage Index Tables*,

No. 16-6530, *Owensboro Health, Inc. v. Sec'y of Health & Human Servs.*

Based Statistical Areas (CBSA) created by the Office of Management and Budget. As examples of the size of these areas, the Owensboro CBSA contains three counties, the Bowling Green CBSA contains four counties, and the Louisville CBSA contains seven counties.

In 2000, Congress amended the Medicare Act to require CMS to adjust the wage index, beginning in 2005, to account for staffing decisions made by hospitals. The purpose of applying this "occupational mix adjustment" is to ensure that the differences in wages across geographic areas are actually the result of disparities in regional wages and not differences in hiring choices made by hospitals. Thus, this adjustment controls for differences in what types of staff are used to complete similar tasks. For example, some hospitals may choose to hire registered nurses for certain staffing needs that other hospitals may meet with licensed practical nurses (who require less training and receive lower wages) or nursing aides (less training and lower wages still). If Hospital A chooses to use more registered nurses while Hospital B chooses to use more nursing aides, the occupational mix adjustment is supposed to prevent Hospital A from receiving more reimbursement based on rates resulting from a choice to employ more highly trained staff when a lower level of training may have sufficed. Starting in 2003, CMS used a survey to collect data to create the occupational mix adjustment. In 2005, CMS began application of the adjustment but, lacking full confidence in the survey results, it applied the adjustment to the wage index only at a 10% rate, leaving 90% unadjusted.

In April 2006, the Second Circuit ordered CMS to collect more robust data and create an occupational mix adjustment to apply to the wage index in full instead of at a 10% rate. *Bellevue Hospital Ctr. v. Leavitt*, 443 F.3d 163, 180 (2d Cir. 2006). The court ordered CMS to complete the necessary data collection and other preparation by September 30, 2006, so the new

https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/SNFPPS/downloads/cms-1530-n-addendum-display.pdf (last visited August 1, 2017).

adjustment could be applied for the 2007 fiscal year. *Id.* CMS was therefore acting within a constrained timeframe to create a survey, get providers to return responses, have fiscal intermediaries audit the data, and create the revised occupational mix adjustment. Rather than using the 20 job categories from the 2003 survey, the 2006 survey included only five: 1) registered nurses; 2) licensed practical nurses; 3) nursing aides, orderlies, and attendants; 4) medical assistants; and 5) all other occupations. FY 2007 IPPS Proposed Rule, 71 Fed. Reg. 28,644, 28,646 (May 17, 2006). In notice-and-comment rulemaking, MedPAC—an independent federal body that advises on Medicare payments—had suggested refining the nursing categories and combining other job categories that accounted for only a small percentage of workers in order to decrease the reporting burden while maintaining a reasonable measure of the occupational mix. FY 2007 IPPS Final Rule, 71 Fed. Reg. at 48,007. CMS agreed and moved all occupations that constituted less than 4% of the average hospital workforce to the "other occupations" category. *Id.* In practice, employees in the "other occupations" category were not used to calculate the occupational mix adjustment because that catchall category contained a wide mix of employees. CMS chose these parameters for applying the occupational mix adjustment to strike a balance among several factors: the complexity of the survey; its attendant reporting burden for providers; and the accuracy of the resulting adjustment.

2. The Occupational Mix Adjustment as Applied to OHI in 2007

OHI operates a general, acute-care hospital in Owensboro, Kentucky. It is the only hospital in Owensboro, resulting in a single-provider statistical area. OHI filled out the 2006 survey and classified its medical technicians in the category for "nursing aides, orderlies, and attendants." In its audit of the data, the fiscal intermediary moved those relatively low-paid medical technicians to the "all other occupations" category. This affected OHI's wage index because the "all other occupations" category was not included in the calculation of the

occupational mix adjustment. In essence, the move made it appear that OHI chose to employ a relatively high-paid mix of occupations to meet patient needs. OHI estimated that it would have been reimbursed $575,000 more if the medical technicians had been included in the "nursing aides" category instead of the "other occupations" category.

### B. Procedural History

OHI complained to both the fiscal intermediary and CMS. CMS responded that the medical technicians were properly placed in the "other occupations" category because their job descriptions included tasks beyond providing basic patient care, and the survey instructions define jobs in the "nursing aides, orderlies, and attendants" category as consisting of the provision of basic patient care. To promote uniform classification, CMS sent supplemental instructions to all fiscal intermediaries in the region specifying that jobs such as surgical technicians should be included in the "other occupations" category. The fiscal intermediary also responded to OHI that it believed medical technicians were properly included in the "other occupations" category.

OHI made a request under the Freedom of Information Act (FOIA) to get audited occupational-mix-survey data from forty-five hospitals in the region. For ten of those hospitals, medical technicians were included in the "nursing aides, orderlies, and attendants" category. For thirty-five of the hospitals, medical technicians were included in the "other occupations" category. The ten hospitals with misclassified medical technicians were audited by a different fiscal intermediary than the one that reviewed OHI.

OHI challenged the occupational mix adjustment to the Provider Reimbursement Review Board (PRRB). The PRRB decided that the fiscal intermediary had properly followed CMS policy by classifying OHI's medical technicians in the "other occupations" category. Citing the regulation at 42 C.F.R. § 412.64(k), the PRRB found that it did not have authority to require the

fiscal intermediary to reclassify OHI's technicians against CMS policy, nor authority to address potential errors made by other fiscal intermediaries when classifying technicians at hospitals that were not part of the appeal.

OHI filed this lawsuit in the Western District of Kentucky. The parties filed cross motions for summary judgment, and the district court denied OHI's motion and granted the Secretary's motion. OHI timely appealed.

## II.  ANALYSIS

### A.  Jurisdiction and Standard of Review

OHI sued under 42 U.S.C. § 1395oo(f)(1), which states that "[p]roviders shall have the right to obtain judicial review of any final decision of the [Provider Reimbursement Review] Board." Following the entry of final judgment for the Secretary, this court has jurisdiction over this timely appeal under 28 U.S.C. § 1291.

The Administrative Procedure Act governs the scope of our review of agency actions. 5 U.S.C. §§ 701-706. We review the district court's summary judgment decision de novo. *Battle Creek Health Sys. v. Leavitt*, 498 F.3d 401, 408 (6th Cir. 2007).

### B.  Statutory Interpretation and *Chevron* Deference

OHI argues that CMS violated relevant statutory language by effectively excluding medical technicians from the calculation of the occupational mix adjustment. When an agency engages in statutory interpretation with the force of law, such as through notice-and-comment rulemaking, we afford the agency deference. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under the *Chevron* standard, if Congress has not directly spoken on the issue, the agency's interpretation is upheld unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. The statute at issue states:

> Not less often than once every 3 years the Secretary (through such survey or otherwise) shall measure the earnings and paid hours of employment by occupational category and *shall exclude data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services*. Any adjustments or updates . . . shall be made in a manner that assures that the aggregate payments under this subsection in the fiscal year are not greater or less than those that would have been made in the year without such adjustment.

42 U.S.C. § 1395ww(d)(3)(E)(i) (emphasis added).

OHI argues that the italicized portion excluding data on wages from skilled-nursing facilities—which are reimbursed for Medicare services through a separate mechanism—implies that all other wages must be included in calculating the occupational mix adjustment. Although OHI's medical technicians were included in the survey, their wage data was not used in calculating the occupational mix adjustment because "other occupations" were effectively excluded from the calculation. OHI claims that this exclusion violates the statute.

The statute is largely silent as to the details of how to collect wage and occupation data, analyze it, and create the occupational mix adjustment. This ambiguity leaves CMS with discretion on the matter. *See Atrium Med. Ctr. v. U.S. Dep't of Health & Human Servs.*, 766 F.3d 560, 568 (6th Cir. 2014) (finding the lack of detail in a delegation of authority to CMS to create the Medicare wage index to confer broad discretion on the agency). If CMS had waited more than three years to collect data or had included wages from skilled-nursing facilities, then it would have acted "manifestly contrary to the statute" because those details are actually spelled out in the statute. But the explicit exclusion of wages from skilled-nursing facilities does not mean that all other wages must be included. On that question, Congress did not speak directly and thus left CMS with discretion.

CMS interpreted that ambiguity in the statute in a way that was not arbitrary, capricious, or manifestly contrary to the statutory language. CMS used a "survey or otherwise" to "measure the earnings and paid hours of employment by occupational category." 42 U.S.C.

§ 1395ww(d)(3)(E)(i). It incorporated feedback from the notice-and-comment process and struck a balance as to the reporting burden on medical facilities and accuracy by simplifying the number of categories. OHI alleges that CMS's decision to classify medical technicians as "other occupations" and then not use that data to construct the final occupational mix adjustment was arbitrary, but the agency's interpretation of ambiguities in the statute was not arbitrary or capricious. As explained in the well-reasoned and thorough opinion of the district court, "[t]he Secretary considered comments and other relevant factors and articulated a reasonable explanation for its policy." *Owensboro Health, Inc. v. Burwell*, No. 4:14-cv-0095, 2016 WL 4361527, at *12 (W.D. Ky. Aug. 12, 2016) We adopt the analysis of the district court on the issue of statutory construction, *id.* at *9-12, and uphold the agency's interpretation.

## C.    Implementation of CMS's Categorization of Medical Technicians

OHI's second argument is that CMS acted arbitrarily by placing OHI's medical technicians in the "other occupations" category, while some other hospitals were allowed to include their medical technicians in the "nursing aides" category. Under the Administrative Procedure Act, an agency action is set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Manufacturers Ass'n v. State Farm Mutual Auto. Insur. Co.*, 463 U.S. 29, 43 (1983).

CMS instructions for the 2006 survey classified medical technicians in the "other occupations" category because those employees did tasks that did not fit in the "nursing aides,

orderlies, and attendants" category. CMS's supplemental instructions made it clear that technicians should be placed in the "other occupations" category. It was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" for CMS to follow its policy by classifying OHI's medical technicians in the "other occupations" category. The PRRB directly decided this question, and the decision upholding that rule was supported by substantial evidence. 5 U.S.C. § 706(2)(E). We again adopt the district court's well-reasoned analysis on this issue. *Owensboro Health, Inc.*, 2016 WL 4361527, at *15.

A closer question in this case is whether CMS acted in an arbitrary manner by allowing at least ten other hospitals to classify their medical technicians in the "nursing aides" category. The PRRB did not decide this issue because it found it had "no authority under the [review] regulation to act on this information." (R. 14-1, PageID 107) The PRRB stated that OHI's "only potential remedy in this case appears to be through judicial review of the agency's action." *Id.*

OHI cites *Sarasota Memorial Hospital v. Shalala*, 60 F.3d 1507, 1513 (11th Cir. 1995), as an example of a court ordering CMS to recalculate an index—in that case the Medicare wage index—because the agency had failed to treat similar things in a like manner. In *Sarasota*, CMS treated two payroll taxes differently even though the taxes were functionally the same thing. *Id.* But the failure to have uniform classification of medical technicians in this case is not analogous to the CMS policy of treating two taxes differently in *Sarasota*. Instead, this case is a failure to uniformly implement a policy that, per the discussion above, itself survives review. The review regulation does not provide CMS with authority to correct this type of error, *see* 42 C.F.R. § 412.64(k) (allowing for corrections to a hospital's own data, but not to data from other hospitals), and there is no case authority in which a hospital has appealed the calculation of wage data based on hospitals that were outside the challenging hospital's labor market, *see, e.g.*, *Sarasota*, 60 F.3d at 1508-09 (appealing based on wages within the Sarasota statistical area);

*Atrium*, 776 F.3d at 570-71 (Cincinnati statistical area). We decline to create such a rule in these circumstances. As a practical matter, OHI's argument could be used by any hospital to challenge the occupational mix adjustment whenever that hospital can find a mistake (through FOIA or elsewhere) in the classification of employees at *any* other hospital in the country. Because the occupational mix adjustment is budget neutral by statute, 42 U.S.C. § 1395ww(d)(3)(E)(i), a correction resulting from an error of categorization at any hospital could require recalculation of reimbursement rates for all medical facilities.

And specific to this case, CMS was acting under a court-imposed deadline in *Bellevue*, 443 F.3d at 180 (ordering CMS to conduct the survey and publish the occupational mix adjustment on an expedited basis), and was required to collect data, have fiscal intermediaries audit the data, and then construct the occupational mix adjustment in an accelerated timeframe. The mistake here was made by a fiscal intermediary—different from the one that audited OHI— and not by CMS itself. CMS was coordinating a complex task with multiple fiscal intermediaries and the agency attempted to maintain uniformity, such as through supplemental instructions to all fiscal intermediaries to classify technicians in the "other occupations" category. Considering the complexity of the task and the accelerated timeframe imposed by the court-ordered deadline, it is unsurprising that CMS was not able to ensure perfect uniformity, especially across different fiscal intermediaries. In sum, while there may be situations in which a classification error requires correction and recalculation of reimbursements due to arbitrary and capricious conduct of the agency, such a situation is not presented here.

This conclusion does not mean that we are unsympathetic to the financial concerns of OHI and other small medical facilities across the nation that rely on reimbursement under the Medicare Act to provide patient care in their communities. We also recognize the dilemma of OHI—the hospital made hiring decisions with an eye on CMS policy as evidenced in the 2003

survey, assuming that it could include medical technicians when calculating the occupational mix adjustment. The 2006 survey changed job categories in a way that had a financial impact on OHI in 2007—though perhaps not on some other facilities—then CMS made differing alterations in later surveys. But it is not improper for CMS to utilize the lessons it learned in this situation to improve its surveys for the future. CMS employed a reasoned approach as it complied with court orders, responded to comments, and managed multiple fiscal intermediaries. Implementation of the occupational mix adjustment here was in accordance with the law and not arbitrary or capricious. CMS did not violate the standards of the Administrative Procedure Act.

## III.    CONCLUSION

We **affirm** the decision of the district court and the PRRB.